# CRIMINAL COMPLAINT

# ORIGINAL

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA v. JACK GAMBARYAN GRIGOR GARIBYAN HOVANNES IGARIAN ARAM KHACHATRYAN HAYK KARAYAN ZHIRAYR KARAYAN | DOCKET NO. |
|---|---|
| | MAGISTRATE'S CASE NO. 10- **10-1132M** |

FILED
CLERK, U.S. DISTRICT COURT
MAY 1 2 2010
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| Complaint for violation of 21 U.S.C., sections 841(a)(1) and 846. | | |
|---|---|---|

| NAME OF MAGISTRATE JUDGE FERNANDO M. OLGUIN | UNITED STATES MAGISTRATE JUDGE | LOCATION Los Angeles, CA |
|---|---|---|

| DATE OF OFFENSE April 26, 2010 | PLACE OF OFFENSE Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

### Count One

On or about April 26, 2010, defendants JACK GAMBARYAN aka Zhak Gambarian, GRIGOR GARIBYAN, HOVANNES IGARIAN, ARAM KHACHATRYAN, HAYK KARAYAN, and ZHIRAYR KARAYAN knowingly and intentionally possessed with intent to distribute in excess of 100 marijuana plants, a schedule I controlled substance, all in violation of 21 U.S.C. section 841(a)(1).

### Count Two

Beginning at a date unknown and continuing until on or about April 26, 2010, defendants JACK GAMBARYAN aka Zhak Gambarian, GRIGOR GARIBYAN, HOVANNES IGARIAN, ARAM KHACHATRYAN, HAYK KARAYAN, and ZHIRAYR KARAYAN conspired and agreed with each other to knowingly and intentionally possess with intent to distribute in excess of 100 marijuana plants, a schedule I controlled substance, in violation of 21 U.S.C. section 841(a)(1), all in violation of 21 U.S.C. section 846.

## BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT JEREMY M. STEBBINS |
|---|---|
| | OFFICIAL TITLE SPECIAL AGENT -- FBI |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) | DATE May 12, 2010 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

AUSA SGW:sgw       REC: Detention

AFFIDAVIT

I, JEREMY M. STEBBINS, being duly sworn, hereby depose and say:

**BACKGROUND**

1.  I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"). I am currently assigned to the FBI's Los Angeles Field Division Office. I have been an SA with the FBI since September 2004. While employed by the FBI, I have received specialized and on-the-job training and experience in investigating various federal criminal offenses, including racketeering, narcotics trafficking, violent crimes, money laundering, bank fraud, credit card fraud, identity theft, medical fraud, extortion, and firearms offenses. I have been investigating Eurasian Organized Crime for approximately one and a half years, all of which has been spent on the Eurasian Organized Crime Task Force ("EOCTF"). The EOCTF is comprised of Federal and State law enforcement officers from the FBI, IRS, Health and Human Services, Office of Inspector General, Glendale Police Department, Los Angeles Sheriff's Department, Los Angeles Police Department, and Burbank Police Department.

2.  This affidavit is made in support of a complaint and arrest warrants for the following individuals:
**JACK GAMBARYAN**, aka Zhak Gambarian; **GRIGOR GARIBYAN; HOVANNES IGARIAN; ARAM KHACHATRYAN; HAYK KARAYAN** ("H. KARAYAN"); and **ZHIRAYR KARAYAN** ("Z. KARAYAN") for conspiracy to possess with intent to distribute marijuana, and possession with intent to

distribute marijuana.

3.   I make this affidavit based upon my training and experience as a federal agent, and upon information from the other sources cited in this affidavit.

**PROBABLE CAUSE FOR ARREST - Events at Unit D**

4.   I have read the Los Angeles Police Department ("LAPD") arrest report for DR 10-1609646, and a related state search warrant affidavit, which provided the following information.

5.   On April 26, 2010, at approximately 1600 hours LAPD Detective Travis Coyle, assigned to the Narcotics Enforcement Detail of the Foothill Detective Division, received information from an anonymous informant regarding the cultivation of marijuana at 8239 Lankershim Boulevard, Unit D, North Hollywood, California.  Det. Coyle is a court-qualified expert in most areas of narcotics enforcement.  He has attended the LAPD 40 hour narcotics school, and another LAPD-approved narcotics enforcement school.  He has attended a two-day Indoor Cannabis Cultivation Investigator's Course at the Midwest Counterdrug Training Center. His primary duty in his assignment to the Narcotics Enforcement Detail is the investigation of narcotics cases, and he has testified in Los Angeles County Superior Court as an expert in narcotics cases, and has testified in that court about the cultivation of marijuana.

6.   The informant stated that he/she had seen several

2

marijuana plants in the location, and had seen heavy pedestrian traffic from the location. The informant described two suspects: a white male, mid 20's to early 30's, approximately 5' 9" and 200 pounds, with dark hair and eyes and a tattoo of an eagle on his chest; and a Hispanic male, early 20's, approximately 5' 6" or 7" and 200 pounds, with dark hair and eyes. The informant described two suspect vehicles: a black Mercedes SUV and a newer model gray Honda Accord.

7. Det. Coyle went to 8239 Lankershim to investigate the information. The location is a multi-unit industrial complex. He located Unit D. A black Mercedes SUV was parked east of the unit, and a gray Nissan Altima was parked right in front of the door of Unit D. There were no markings on the outside of Unit D, except a sticker on the window depicting the types of credit cards accepted. The only window to Unit D appeared to be painted black.

8. Det. Coyle saw an unknown Armenian man arrive in a newer black Range Rover, stopping in front of Unit D. A man, later identified as defendant **GARIBYAN**, came from Unit D and met the man from the Range Rover, and both entered Unit D. Shortly thereafter, a silver 2008 Honda Accord, which matched the description of a suspect vehicle given by the informant, arrived and parked across from Unit D. A man, later identified as defendant **GAMBARYAN**, got out of the Honda and entered Unit D.

3

9. Shortly, defendants **GARIBYAN** and **GAMBARYAN** left Unit D, took items from the Honda, and carried the items into Unit D. Defendant **GARIBYAN** carried a five pound propane tank, and defendant **GAMBARYAN** carried a bag containing several packages of bamboo stalks.

10. Det. Coyle, based on his observations at Unit D, believed that Unit D was being used for the indoor cultivation of marijuana. The blacking out of the window of Unit D was consistent with indoor marijuana cultivation, since natural light is prevented, in order to trick the plants into believing they are growing outside by recreating the natural environment indoors. The bringing of a five pound propane tank into Unit D was also consistent with indoor marijuana cultivation, since such tanks are commonly found at indoor marijuana grows, attached to carbon dioxide generators. Such generators create an atmosphere rich in carbon dioxide, which allows the marijuana to grow more rapidly. The bringing of bamboo stalks into Unit D was also consistent with marijuana cultivation, since bamboo stalks are one method of supporting marijuana plants as they grow taller, and Det. Coyle had seen bamboo stalks used to support marijuana plants in prior marijuana cultivation investigations.

11. Based upon his opinion that marijuana was being cultivated in Unit D, Det. Coyle requested the assistance of other members of the LAPD Foothill Narcotics Enforcement Detail.

4

While he waited for their arrival, he saw the man who had arrived in the Range Rover leave Unit D and drive away in the Range Rover.

12. Det. Coyle saw defendant **GAMBARYAN** leave Unit D and stand smoking a cigarette. Then a black 2009 Audi SUV arrived and parked in front of Unit D. A man, later identified as defendant **IGARIAN**, got out of the Audi, shook hands with defendant **GAMBARYAN**, and both men entered Unit D. About fifteen minutes later, defendants **GARIBYAN**, **GAMBARYAN**, and **IGARIAN** left Unit D, held the door of the unit open and moved the Nissan and Audi until the Audi was backed up to the door of Unit D. Defendant **IGARIAN** opened the rear hatch of the Audi, and defendant **GAMBARYAN** brought a large item in a black plastic bag out of Unit D, and **IGARIAN** and **GAMBARYAN** loaded the item into the Audi.

13. Det. Coyle and several other investigators then approached Unit D. While they did so, defendant **GARIBYAN** went back into Unit D. Det. Coyle approached defendant **IGARIAN**, displayed his badge and identified himself as a police officer, asking if he could speak to **IGARIAN**, who nodded assent and walked toward Det. Coyle. Det. Coyle pointed to Unit D and asked **IGARIAN** what kind of business it was. Defendant **IGARIAN** said that he did not know. Det. Coyle said that he had seen **IGARIAN**

5

inside the business for the past 15 minutes, and asked again what type of business it was. **IGARIAN** again said that he did not know. Det. Coyle asked **IGARIAN** what he had put into the Audi from Unit D. **IGARIAN** said that he did not know. While Det. Coyle spoke with him, he noticed that defendant **IGARIAN's** hands were shaking, and he smelled the odor of marijuana coming from **IGARIAN.** Det. Coyle placed defendant **IGARIAN** in handcuffs for further investigation.

14. LAPD Det. McKinney identified himself as a police officer by statement and display of his badge and began to speak with defendant **GAMBARYAN.** While he did so, he smelled a strong odor of marijuana coming from **GAMBARYAN.** Other investigators went to the door of Unit D, to make contact with defendant **GARIBYAN,** who had gone back into Unit D. While at the door, they smelled a strong odor of marijuana coming from Unit D. Based upon all the information and observations, Det. Coyle again formed the opinion that marijuana was being cultivated inside Unit D.

15. Investigators knocked on the door of Unit D, to contact defendant **GARIBYAN.** There was no answer. One of the investigators opened the door of Unit D, which was not locked. When he did so, he saw marijuana plants inside the open door of an interior room, and saw defendants **GARIBYAN, H. KARAYAN, Z. KARAYAN,** and **KHACHATRYAN** inside Unit D. All the remaining

6

defendants were placed in handcuffs for further investigation. While they did so, investigators saw marijuana plants growing in three makeshift rooms inside Unit D.  Det. Coyle opened the hatch of the Audi and looked inside the black plastic bag he had seen defendants **GAMBARYAN** and **IGARIAN** load into the Audi.  The bag contained several dozen marijuana plants in inch-square "Grodan" type cubes consistent with marijuana cultivation.

16.  Det. Coyle obtained a state search warrant for Unit D and for the five vehicles driven by or otherwise associated with the defendants arrested at Unit D.  In the room designated as Room 1 of Unit D, investigators found that there were two cultivation beds.  The beds contained a total of 219 marijuana plant clones in inch-square Grodan cubes, 136 marijuana plants entering the adolescent stage, and 22 marijuana plants in the adolescent stage.  The 136 plants were set in one gallon pots. The 22 plants were set in five gallon buckets containing potting soil.  Each bed was lit by three 600 watt overhead bulbs in individual reflector shades.  Det. Coyle saw that an air conditioner was mounted on one wall, a dehumidifier was at the end of one bed, and oscillating fans were mounted on two opposite walls.  Det. Coyle observed that the lighting was set on a timer to provide 19 hours of light.

17.  In the room designated as Room 2 of Unit D, investigators found that there were two cultivation beds.  The

7

beds contained a total of 96 mature marijuana plants that were at
the end of the flowering stage and ready to harvest.  All the
plants were set in five gallon buckets containing potting soil.
Each bed was lit by four 1000 watt overhead bulbs in individual
reflector shades.  Det. Coyle saw that a carbon filter system was
at one end of the room, a dehumidifier was in the middle of the
room, an air conditioner was mounted on one wall, and oscillating
fans were mounted on two opposite walls.  There were three other
oscillating fans in the room.  Det. Coyle observed that the
lighting was set on a timer to provide 12 hours of light.

        18.   In the room designated as Room 3 of Unit D,
investigators found that there were two cultivation beds.  The
beds contained a total of 53 mature marijuana plants at the
beginning of the flowering stage.  All the plants were set in
five gallon buckets containing potting soil.  One bed was lit by
two 1000 watt overhead bulbs in individual reflector shades.  The
other bed had three such installations, in a mix of 600 and 1000
watt bulbs.  Det. Coyle saw that two air conditioners were
mounted on one wall, a portable dehumidifier was at one end of
the room near a large carbon filter system, and oscillating fans
were mounted on one wall and sitting in an opposite corner.  Det.
Coyle observed that a carbon dioxide generator was hanging from
the ceiling in one corner attached to the propane tank he had
observed earlier, and that the lighting was set on a timer to

8

provide 12 hours of light.

19. Det. Coyle saw two large tubs of water inside Unit D. Water was brought into the tubs from the bathroom plumbing. A submersible pump was in one of the tubs with a hose attached which was long enough to reach each of the grow rooms. Det. Coyle also saw three packages of bamboo stalks such as he had seen defendant **GAMBARYAN** bring into the unit.

20. The investigators placed the six defendants under arrest for conspiracy to possess marijuana for sale. The investigators took keys from the defendants and tried the keys in the lock of Unit D. Defendants **GAMBARYAN, KHACHATRYAN,** and **Z. KARAYAN** had keys for Unit D on their key chains.

**ADDITIONAL PROBABLE CAUSE RELATED ONLY TO DEFENDANT H. KARAYAN**

21. On February 10, 2010, investigators of the EOCTF executed a search warrant at the residence of defendant **H. KARAYAN** at 18536 Brasilia Drive, Porter Ranch, California. They found a marijuana growing operation in the garage of the residence, similar to the one described from Unit D, with more than 200 marijuana plants. Investigators also recovered a loaded .40 caliber pistol from the closet of defendant **H. KARAYAN's** bedroom.

22. Based upon the forgoing information, I believe there is probable cause to believe that defendants **JACK GAMBARYAN,** aka Zhak Gambarian; **GRIGOR GARIBYAN; HOVANNES IGARIAN; ARAM**

9

**KHACHATRYAN; HAYK KARAYAN** ("H. KARAYAN"); and **ZHIRAYR KARAYAN**

("Z. KARAYAN") committed the crimes of conspiracy to possess with

intent to distribute marijuana, and possession with intent to

distribute marijuana, as charged on the face of this complaint.

JEREMY M. STEBBINS

Sworn to before me and
subscribed in my presence
this 12th day of May, 2010

Honorable Fernando M. Olguin
U.S. MAGISTRATE JUDGE

10